[Criminal No. 658. Filed Oct. 17, 1927.]

[260 Pac. 188.]

ALFREDO GRIJALVA, Appellant, v. STATE, Respondent.

Mr. Greg Garcia, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

McALISTER, J.—Alfredo Grijalva was convicted of murder in the first degree and a sentence of life imprisonment imposed. He appeals from the judgment of conviction and the order overruling his motion for a new trial.

The record discloses that in the forenoon of April 23d, 1926, six officers, traveling in two Ford cars, left Nogales, Arizona, looking for persons who they had been informed were transporting whisky. They went north or northwest until about four or five o'clock that afternoon, when they reached a point in Pima county near the Alambre Ranch, where they saw, on the mountain-side a mile or so from the road they were on, three men riding horses. The officers in the rear car got out and walked toward them, and when within a short distance of them ordered them to stop, but, instead of doing so, they turned and rode away through the brush and escaped, leaving two pack horses loaded with liquor, which the officers took and placed in their cars. After eating something, the officers started back to Nogales, and when they had gone a mile or so three men on horseback began shooting at them from the side of the road and killed one of their number, W. W. McKee. Several shots were exchanged between the two parties, but no one else was hit, and after a few minutes the men making the attack rode away, and the officers, having no way of pursuing them, placed the body of McKee in the car in which he had been riding and returned to Nogales.

At the inquest held the following day, four of the officers testified under oath that they were at the scene of the killing but that they were so far away from the persons making the attack they did not

know who they were, and the three officers who ordered them to stop said that they were so far from them at that time also that they did not recognize them then either.

Appellant, whose residence was known to the officers all the while, and Antonio Padilla, were arrested the latter part of May, and at the preliminary hearing four of these officers testified that they were close to appellant and Padilla at the time of the shooting and recognized them. At the trial this testimony was repeated by three of the officers, and the statement of the fourth one, Lon Parker, who was killed after the preliminary and before the trial, was read in evidence. When asked upon cross-examination about their contradictory statements at the inquest, each one admitted it, and explained the discrepancy by stating that at that time he knew Grijalva and Padilla were two of the persons that attacked the officers and killed deceased, but that Padilla had escaped to Mexico, and, in order to allay his fears and induce him to return to the United States, all knowledge of the identity of McKee's assailants was denied.

Several Mexicans residing at the Alambre Ranch at the time of the killing testified that Grijalva, Padilla, and one Sesma came to the ranch on the evening of the 23d of April, 1926, about eight or nine o'clock, and also the following morning, on horseback; that they heard them say that they had exchanged shots with some officers, and requested them (the witnesses) not to tell the officers they had been there; that Alfredo Grijalva was without a hat when he came, and said that he lost it when they met the officers; that he borrowed Antonio Orosco's hat as they were leaving and returned it to him at the ranch about two weeks later. Upon cross-examination, these witnesses admitted that they had told the officers and others just after the killing that

Grijalva was not one of the men who came to the ranch on the evening of the 23d or the morning of the 24th, and one of them, Antonio Orosco, who was arrested, taken to Nogales, and placed in jail on May 28th, made a written statement that evening in the presence of the court reporter and the county attorney of Santa Cruz county and several officers to the effect that Grijalva was not one of the three men who came to the ranch on the evening of April 23d or the following morning. He admitted, however, that during the night of May 28th a number of officers took him from the jail in Nogales to Patagonia, a distance of fifteen or twenty miles, and in a room there in which no one except him and them was present told him that if he did not say that Grijalva was one of those at the ranch it would go hard with him. He then said that Grijalva was at the ranch the evening of the killing, and repeated this statement both at the preliminary and the trial. These Mexican witnesses all explained the discrepancy in their testimony by saying that they were in fear of Grijalva, Padilla, and their friends when they made the statement that Grijalva was not at the ranch just after the killing.

The defense was an alibi. Grijalva testified that he arrived in Tucson from his home in Casa Grande about noon Thursday, the 22d, and that at no time during this stay there was he near the Alambre Ranch, which the evidence discloses was about thirty-five miles south of Tucson. Without stating the testimony on this point, it is sufficient to say that, if true, it would leave no doubt but that Grijalva was in Tucson at the time of the killing.

There are only three assignments, and the first two raise in a different way the insufficiency of the evidence to support the verdict. It is contended that the witnesses for the state wilfully and knowingly testified falsely upon a very material matter,

and that their perjured testimony is uncorroborated by any competent evidence. This contention is based upon the fact that the testimony of the officers directly contradicted that given by them at the inquest. The fact, however, that they had testified a month before that they did not recognize Grijalva at the time of the killing does not necessarily prove that their testimony at the trial that they did recognize him was false or perjured. It does disclose that either at the trial or the inquest false testimony was given, but it was wholly within the province of the jury, before whom all the facts were placed, to say which, and, if the explanation the officers gave of their action at the inquest carried conviction, the jury had a right to accept it and believe the testimony at the trial, notwithstanding the admitted falsity of that at the inquest, for it is elementary that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. But, while this is true, it does not follow that the officers were justified in giving false or perjured testimony at the inquest, even though in doing so they sought to accomplish something commendable. False swearing, though prompted by a desire to aid in the conviction of one guilty of a heinous crime, should never be condoned or looked upon as otherwise than reprehensible, and one who swears in a judicial proceeding that he will tell the truth, the whole truth, and nothing but the truth, and then proceeds to testify to something material he knows to be untrue violates the sanctity of his oath, and the fact that it was ·done in furtherance of a good cause does not make it otherwise.

It is not claimed that those witnesses who testified that Grijalva was at the Alambre Ranch about eight or nine o'clock on the evening of the killing and the following morning had previously given different testimony, but merely that they had made contrary state-

ments to the officers. These statements, like the testimony of the officers at the inquest, were introduced and received for purposes of impeachment, and their weight was solely for the jury. The same is true of the testimony of Antonio Orosco, who, until he was taken from the jail in Nogales to Patagonia by the officers, and in a room in which only he and they were present was told by them that the case against him would go hard with him if he did not swear that Grijalva was at the Alambre Ranch on the evening of the killing, had stated previously both orally and in writing that he was not there at that time. Whether the testimony that he was there was true, or false and induced by fear, was wholly for the jury, and it had the full facts before it.

It is contended that the testimony of the officers and those at the Alambre Ranch, that Grijalva came there on the evening of April 23d, is not corroborated by any competent evidence, but this contention, even if such testimony were necessary overlooks the fact that G. W. Gates, who at the time was a deputy sheriff of Santa Cruz county, one of the six officers present when McKee was killed, and also a witness at neither the inquest nor the preliminary, testified that he knew Grijalva well, and had been acquainted with him for about eight years; that he knew two of his brothers, one of whom had worked for his uncle; that he was about forty yards from him at the time of the shooting and recognized him; that upon his return to Nogales he told Jim Hathaway, undersheriff, that he was one of the three men who did the killing, but said nothing to anyone else, because Hathaway advised him to keep quiet, saying, "If they get out an arrest for Grijalva, Padilla wouldn't come across the line; just let it stay a little while and just tell nobody." This is not only strongly corroborative of the testimony of the other

officers, but sufficient of itself upon the question of Grijalva's identity to support the verdict if the other officers had actually sworn falsely in reference thereto, or if there had been no one other than Gates and the deceased present at the time of the killing.

The third assignment grows out of the denial of the motion for a new trial based upon the ground of newly discovered evidence. In support of this motion, appellant filed the affidavit of Mauro Quiroz stating that during the night of April 23d, 1926, three men on horseback came to the Pena Blanca Ranch, which is situated southwesterly from Tucson and about thirty-five miles from the Alambre Ranch, and procured some coffee; that affiant was personally acquainted with one of them, Antonio Padilla, but did not know the other two; that the three men told him that they had lost a load of liquor, the same having been taken away from them; that he knows Alfredo Grijalva, the appellant, and that he was not one of the three.

The affidavit of Delfino M. de Morales, who resides on a ranch about eight miles from Tucson, was also filed. In it she states that three men came to the ranch on the early morning of April 24th, 1926, and asked for something to eat; that she prepared a meal for them which they ate; that she had seen two of the men before, Antonio Padilla and Angel, and that the third man was called Hilberto by the other two; that she heard him say he borrowed a hat; that while they ate she heard them talking about having shot at an automobile; that she knows Alfredo Grijalva, and he was not one of the three.

In addition there were filed the affidavits of appellant and his two attorneys, to the effect that they knew nothing about the facts in the foregoing affidavits until after the trial, and that all due diligence was used to ascertain the full facts prior thereto.

The recitals continued in the affidavits of Quiroz and Morales were in line with appellant's theory of the case, but were merely cumulative of the testimony of Narcisco Dominguez and Diego Gastelum. According to these witnesses, Grijalva was not one of the men who came to the Alambre Ranch on the evening of April 23d, but the three were Antonio Padilla, Hilberto Sesma, and Angel, the surname of the last-mentioned not appearing. It is the rule generally followed that it is largely within the discretion of the trial court whether a new trial upon the ground of newly discovered evidence shall be granted, and its action in overruling such a motion will not be reversed unless an abuse of discretion manifestly appears. *Talley* v. *State,* 18 Ariz. 309, 159 Pac. 59. It is also generally held that a new trial is properly refused when sought upon the ground of newly discovered evidence that is merely cumulative and impeaching. *Young Chung* v. *State,* 15 Ariz. 79, 136 Pac. 631. We are unable to say that the trial court abused its discretion in denying the motion for a new trial upon this ground.

Antonio Padilla, a co-defendant of appellant, had been tried separately, convicted, and given life imprisonment, and, in response to a question asked by the court at the oral argument as to why he had not been made a witness in the case, the Attorney General stated that he did not know, and added that he had been reliably informed that, if the case were heard again, Padilla would testify that appellant was not one of the three men present at the time the deceased was killed. This, of course, we cannot consider, but, if true, is very important, and, in view of the entire record, which is not entirely free from doubt, is a matter that may be considered by the body in whose hands appellant's future rests.

The judgment is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.